UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY RALPH MATTISON,

      Petitioner,                      Case No. 2:13-cv-11026

v.                                HONORABLE STEPHEN J. MURPHY, III

MITCH PERRY,

      Respondent.

_____/

**OPINION AND ORDER DENYING
THE PETITION AND SUPPLEMENTAL PETITION [1, 15]
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY,
AND GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Petitioner Anthony Ralph Mattison, a state prisoner at the Newberry Correctional Facility in Newberry, Michigan, has filed a *pro se* petition and supplemental petition for habeas relief pursuant to 28 U.S.C. § 2254. Mattison challenges his convictions for first-degree criminal sexual conduct involving his biological daughter by alleging that (1) the trial court violated his constitutional rights, (2) the evidence at trial was insufficient, (3) trial counsel was ineffective, (4) the prosecutor committed misconduct, and (5) he is actually innocent of the crimes for which he is incarcerated. Respondent Mitch Perry urges the Court to deny the petitions on grounds that Mattison procedurally defaulted his claim about the trial court, his actual-innocence claim is not cognizable on habeas review, and the state courts reasonably rejected Mattison's remaining claims. The Court agrees that Mattison's claims do not warrant habeas relief. Accordingly, the petition and supplemental petition will be denied.

# BACKGROUND

Mattison was bound over for trial in Wayne County Circuit Court on sixteen counts of first-degree criminal sexual conduct. The Michigan Court of Appeals accurately summarized the evidence at trial as follows:

> Defendant and the victim's mother divorced when the victim was three or four years old, and remarried when the victim was 11 years old. In the interim, the victim lived with her mother and visited defendant every other weekend. The victim, aged 18 at the time of trial, testified that defendant began engaging in sexual acts with her when she was about 11 or 12 years old. She explained that defendant eventually began having sexual intercourse with her "two to three times a week, if not more." The sexual acts occurred in different rooms throughout the house and inside defendant's van. The victim indicated that defendant warned that if she disclosed the acts he would kill the person she told or would hurt her. During the first incident that the victim could recall, defendant directed her into the basement, kissed her "on the mouth," and put her hand on his penis. The victim testified that as she developed, defendant began having sexual intercourse with her. The victim further testified that defendant also had "oral" sex with her, and explained that defendant's "tongue would kiss [her] vagina." The victim also indicated that defendant "made [her] suck or kiss his penis." The victim explained that the last sexual act occurred in February 2007, when defendant had sexual intercourse with her in his van while parked in a mall parking lot. Three days later, the victim disclosed the incidents to a schoolteacher. The victim subsequently reported to the police that after the last act of sexual intercourse, defendant ejaculated on a particular seat in his van. Deoxyribonucleic acid (DNA) testing of semen taken from the van seat revealed the presence of DNA that matched a DNA sample taken from defendant.
>
> At trial, defendant denied any wrongdoing and argued that the victim was not credible, was manipulative, and wanted her parents to remain separated for her own personal gain. Defendant testified that the semen stains in his van were deposited when he twice had sexual intercourse with a coworker in May 2007.

*People v. Mattison*, No. 283212, 2009 WL 1441548, at *1 (Mich. Ct. App. May 21, 2009).

The prosecutor dismissed ten of the sixteen counts at the close of the proofs, and the case was sent to the jury on six counts of first-degree criminal sexual conduct. On November 14, 2007, the jury found Mattison guilty of five counts of criminal sexual conduct, including two counts of sexually penetrating the complainant when she was under the age of thirteen, *see* Mich. Comp. Laws § 750.520b(1)(a), and three counts of sexually penetrating the complainant when she was thirteen, fourteen, or fifteen years old, *see* Mich. Comp. Laws § 750.520b(1)(b). The jury acquitted Mattison of one count of first-degree criminal sexual conduct with the complainant when she was under the age of thirteen. On December 6, 2007, the trial court sentenced Mattison to five concurrent terms of 15 to 30 years in prison.

On appeal, Mattison made five arguments through counsel: (1) the evidence at trial was insufficient to support his convictions, (2) the prosecutor shifted the burden of proof during closing arguments, (3) the trial court erroneously scored two offense variables of the state sentencing guidelines, (4) he should be re-sentenced before a different judge because the trial judge was biased, and (5) the trial court failed to correct inaccurate information in his pre-sentence report. He also filed a pro se supplemental brief and raised additional issues concerning his trial attorney, the prosecutor, and the trial judge.

The Michigan Court of Appeals affirmed Mattison's convictions, but vacated his sentence and remanded the case for re-sentencing and correction of the pre-sentence report. *See Mattison*, 2009 WL 1441548, at *1, *8. On January 29, 2010, the Michigan

Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Mattison*, 485 Mich. 1074 (2010).

On April 23, 2010, the trial court re-sentenced Mattison to five concurrent terms of 11 years and three months to 30 years in prison. Mattison appealed his new sentence through counsel on the ground that the sentence violated the principles of proportionality. In another pro se supplemental brief, he attempted to raise issues about alleged errors that occurred during his trial and initial sentencing. The Michigan Court of Appeals affirmed Mattison's new sentence but declined to address the *pro se* claims that went beyond the scope of the appeal or that the Court of Appeals had previously rejected. *See People v. Mattison*, No. 298703, 2011 WL 4949693 (Mich. Ct. App. Oct. 18, 2011). On May 21, 2012, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Mattison*, 491 Mich. 919 (2012). On October 1, 2012, the United States Supreme Court denied Mattison's petition for the writ of certiorari. *See Mattison v. Michigan,* 568 U.S. 910 (2012) (Mem.).

On March 6, 2013, Mattison commenced this action by filing a petition for a writ of habeas corpus. But before the State could file an answer, Mattison moved to stay the federal proceedings and to hold his habeas petition in abeyance while he pursued additional state remedies. ECF 11. The Court granted Mattison's motion and closed this case for administrative purposes. ECF 12.

Mattison then filed a pro se motion for relief from judgment in the state trial court. He raised four arguments: (1) the trial court judge and jury were biased, thus depriving him of his constitutional rights, (2) trial counsel was ineffective, (3) the prosecutor was

guilty of misconduct, and (4) both trial and appellate counsel failed to raise meritorious claims on his behalf. The trial judge's successor denied the post-conviction motion because Mattison had raised his claims about the prosecutor's conduct, the trial judge's alleged bias, and trial counsel in his appeal of right. The successor trial court also stated that Mattison had failed to show that the trial judge was personally biased against him or that the alleged comments actually occurred. *See People v. Mattison*, No. 07-006223-01-FC (Wayne Cty. Cir. Ct. Mar. 6, 2014). Mattison sought reconsideration on the basis that the trial judge cancelled his bond without giving a reason and that the trial judge's successor failed to review the evidence he attached to his motion for relief from judgment. The successor trial court denied the motion for reconsideration after it concluded that the issue about bond lacked merit and that it could not consider any of the items that Mattison attached to his motion for relief from judgment. *See People v. Mattison*, No. 07-006223-01-FC (Wayne Cty. Cir. Cr. Apr. 2, 2014).

Mattison appealed the trial court's decisions, but the Michigan Court of Appeals denied the delayed application for leave to appeal because Mattison failed to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Mattison*, No. 321810 (Mich. Ct. App. Sept. 4, 2014). On April 28, 2015, the Michigan Supreme Court denied leave to appeal for the same reason. *See People v. Mattison*, 497 Mich. 1012 (2015). On November 24, 2015, the Michigan Supreme Court denied Mattison's motion for reconsideration. *See People v. Mattison*, 498 Mich. 922 (2015).

On July 22, 2015, Mattison filed a combined supplemental habeas petition and motion to re-open this case. ECF 15. The Court granted the motion, and on May 11,

2016, the State filed an answer to the petition. ECF 16, 19. Mattison filed his reply on

June 2, 2016. ECF 21.

## STANDARD OF REVIEW

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA),

the following standard applies in federal habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The grounds for granting habeas relief are therefore narrow. A state court's

decision is "contrary to" clearly established law if it applies a rule that contradicts the

governing law set forth in Supreme Court cases or if it confronts a set of facts that are

materially indistinguishable from a decision of the Supreme Court but nevertheless

arrives at a result different from that precedent. *Mitchell v. Esparza*, 540 U.S. 12, 15–16

(2003). And a state court's application is "unreasonable" when it identifies the correct

governing legal principle from the Supreme Court's cases but unreasonably applies that

principle to the facts of the petitioner's case. *Wiggins v. Smith*, 539 U.S. 510, 520

(2003). But the state court's application must be more than incorrect or erroneous; it

must be "objectively unreasonable." *Id.* at 520–21. So "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Rather, to obtain federal habeas relief, a state prisoner must show that the state court's rejection of his claims "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

Timing also plays a role. The state court's decision is judged by the clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). And a state court's determination of a factual issue is presumed correct unless rebutted by clear and convincing evidence. *Holland v. Rivard*, 800 F.3d 224, 242 (6th Cir. 2015) (citing 28 U.S.C. § 2254(e)(1)), *cert. denied*, 136 S. Ct. 1384 (2016). Later discoveries are also unavailing, because review is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## ANALYSIS

I.    <u>The Trial Court</u>

Mattison's case was thrice before the Michigan Court of Appeals. His third appeal concerned the denial of his motion for reconsideration. The court rejected all of his claims because he could have raised them—or actually did raise them—in his earlier appeals. Respondent therefore argues that Mattison's claims about the trial court are

procedurally defaulted. *See* Answer in Opp'n to Pet. for Writ of Habeas Corpus at 24–25.[1]

The Court of Appeals, however, did not say which of Mattison's claims were barred by his failure to raise the claims on direct appeal and which claims were decided against him in a prior appeal. Its order is ambiguous, and ambiguous orders do not provide an adequate and independent state ground for denying review of a federal constitutional claim. *Peoples v. Lafler*, 734 F.3d 503, 511 (6th Cir. 2013). The Court therefore declines to find that Mattison's claims about the trial court are procedurally defaulted and will review his judicial-misconduct claims on the merits.

A. Revoking Bond

Mattison claims that the trial court deprived him of a protected liberty interest by revoking or modifying his bond before trial. Mattison admits that he was released on bond a week later. More importantly, his claim to pretrial bail became moot once he was convicted. *Murphy v. Hunt*, 455 U.S. 478, 481–82 (1982) (*per curiam*); *accord United States v. Manthey*, 92 F. App'x 291, 297 (6th Cir. 2004).

---

[1]     A procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). In Michigan, a state court may not grant a motion for relief from judgment if the defendant "alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence . . . unless the defendant demonstrates (a) good cause for failure to raise such grounds on appeal . . . , and (b) actual prejudice from the alleged irregularities that support the claim for relief." Mich. Ct. R. 6.508(D)(3). Rule 6.508(D)(3) is a state procedural default rule. *Peoples v. Lafler*, 734 F.3d 503, 511 (6th Cir. 2013).

Michigan Court Rule 6.508(D)(2), on the other hand, "is a 'relitigation' rule under which the state court will not grant relief if the petitioner alleges claims that were decided against the petitioner on a prior appeal." *Id.* "When a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review." *Cone v. Bell,* 556 U.S. 449, 466 (2009).

B.  Not Excusing Biased Jurors

Mattison alleges that the trial court allowed biased jurors to sit on his case. The Sixth Amendment to the United States Constitution guarantees a criminal defendant's right to an impartial jury and is applicable to the states via the Fourteenth Amendment. *Dennis v. Mitchell*, 354 F.3d 511, 520 (6th Cir. 2003). This right entitles a defendant to a fair hearing before a panel of impartial, indifferent jurors who are "capable and willing to decide the case solely on the evidence before [them], and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen."  *Smith v. Phillips*, 455 U.S. 209, 217 (1982); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961).

The jurors at Mattison's trial swore to justly decide the case and to render a verdict only on the evidence introduced at trial. 11/12/07 Trial Tr. at 101. Mattison nevertheless claims that juror Joseph Spence in seat number eight should have been excused because Spence stated during voir dire that he was unsure of his ability to remain impartial. The reason he gave for his uncertainty was that he had a close friend who was "going through the same thing with her father." *Id.* at 41. Spence, however, went on to say that he would not find someone guilty simply because he had a friend whose experience was similar to that of the complainant, *id.* at 42, and he stated that he had no problem with basing a verdict on a person's word, *id.* at 58–59. He agreed to use his common sense when deliberating the case, and he was not troubled by the fact that he would not be permitted to apply the facts of his friend's case to the complainant's case. *Id.* at 67. He also indicated that he was satisfied to be on the jury. *Id.* at 69.

The Court concludes that Spence was not biased against Mattison and that the trial court did not violate Mattison's right to an impartial jury by not sua sponte excusing Spence for cause.

The other juror in question was Lajuana Scott, who informed the trial court on the second day of trial that she knew a prospective witness, Roseleyn Traylor.[2] When the trial court asked Scott whether Traylor was a close friend, Scott responded, "No, we haven't talked in about two years." Scott then assured the trial court that she could be fair, and the trial court resumed the trial. 11/13/07 Trial Tr. at 3–4. Mattison has failed to show that Ms. Scott was biased against him.

The record indicates that Scott was capable and willing to decide the case solely on the evidence before her. The record likewise revealed that the trial court was mindful of Mattison's right to a fair and impartial jury and instructed the jurors not to let sympathy or prejudice influence their decision. *Id.* at 169. Accordingly, Mattison has no right to relief on the basis of his juror-bias claim.

C.  The Pre-Sentence Reports and Scoring of the Sentencing Guidelines

Mattison next alleges that the trial court refused to correct his pre-sentence information reports and erred when scoring the state sentencing guidelines. He also claims that the trial court relied on inaccurate information when sentencing him, in violation of his federal constitutional rights.

"There is no federal constitutional right to a pre-sentence investigation and report," and "[t]he mere presence of hearsay or inaccurate information in a pre-sentence report does not constitute a denial of due process."  *Allen v. Stovall*, 156 F. Supp. 2d

2  Traylor ultimately testified that she was a social worker at the complainant's school and described her experiences with the complainant.

791, 797 (E.D. Mich. 2001). Furthermore, a state court's alleged misapplication of state sentencing laws is "a matter of state concern only," and "federal habeas corpus does not lie for errors of state law." *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) (citing *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)). Petitioner's sentence of eleven years, three months, to thirty years falls within Michigan's statutory maximum of life imprisonment or any term of years, *see* Mich. Comp. Laws § 750.520b(2)(a), and the severity of a sentence that falls within the limits set by statute is not a ground for habeas corpus relief. *Townsend v. Burke*, 334 U.S. 736, 741 (1948).

Nevertheless, Mattison alleges that the trial court relied on inaccurate information at sentencing, in violation of his constitutional rights. A sentence violates the constitutional right to due process if it is based on "misinformation of constitutional magnitude," *United States v. Tucker*, 404 U.S. 443, 447 (1972), or on "extensively and materially false" information which the defendant had no opportunity to correct through counsel. *Townsend,* 334 U.S. at 741.

Mattison challenges the fifty points scored for offense variable 13, which is a "continuing pattern of criminal behavior." Mich. Comp. Laws § 777.43(1). Fifty points is appropriate if "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more sexual penetrations against a person or persons less than 13 years of age." Mich. Comp. Laws § 777.43(1)(a).

Mattison was convicted of two counts of sexually penetrating a person under 13 years of age. He was acquitted of a third count of sexually penetrating a person under the age of 13, but all crimes within a five-year period—including the sentencing

offense—must be counted for purposes of scoring offense variable 13, "regardless of whether the offense resulted in a conviction." Mich. Comp. Laws § 777.43(2)(a). Under this statute, there need only be "a preponderance of the evidence supporting that the offense took place." *People v. Nix*, 301 Mich. App. 195, 205 (2013).

The complainant's testimony satisfies this requirement. She testified at the preliminary examination that, in May of 2001, Mattison put his penis in her vagina, while at other times she opened her mouth and kissed or sucked Mattison's penis, and these things happened more than 10 times in 2001. 3/12/07 Prelim. Examination Tr. at 10–11, 13. On December 4, 2001, for example, Mattison put his penis in her vagina and kissed her vagina or put his tongue on her vagina. *Id.* at 7–8, 12. At trial, she testified that Mattison had sex with her at least twenty times between the ages of 10 or 11 and 17. 11/12/07 Trial Tr. at 137, 154, 159, 171–72. Her date of birth was October 6, 1989, *id.* at 125, so, she would have been 11 or 12 years old in 2001.

In light of the complainant's testimony, offense variable 13 was not scored on the basis of extensively and materially false information or on misinformation of constitutional magnitude. Mattison has no right to relief on the basis of his sentencing claim.

D. Bias

Mattison states that the trial court was biased against him and unfair. In support, he points to several statements by the presiding judge at various proceedings.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution "requires a fair trial in a fair tribunal, before a judge with no actual bias

against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997) (internal quotation marks and citation omitted). But courts ordinarily "presume that public officials have properly discharged their official duties." *Id.* at 909. So to prevail on his judicial bias claim, Mattison must show "there was bias, or such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused." *Ungar v. Sarafite*, 376 U.S. 575, 588 (1964). As further explained by the Supreme Court:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Liteky v. United States*, 510 U.S. 540, 555 (1994).

> *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.

*Id.* at 555–56.

Mattison claims that the trial court made it clear at a pretrial conference that he was wasting the court's time by demanding a trial. Mattison points out that the trial court was "irked" because his case had been lingering on the court's docket for eight months, and the court asked Mattison's attorney why Mattison was reluctant to take a polygraph

13

examination. 8/29/04 Mot. Hr'g Tr. at 4. And at Mattison's sentencing, the trial judge mentioned that it caused him some concern when Mattison declined the court's invitation to take a polygraph examination. 12/6/07 Sentencing Tr. at 12. But none of these examples demonstrate a deep-seated antagonism against Mattison. Rather, the comments reflect the trial judge's ordinary concern with his docket and the truth of the allegations against Mattison.

Mattison also claims that after his trial, the trial judge followed him into the public hallway and used crass language when telling him to move and sit around the corner where he could not be seen. The Court has found no evidence of this comment in the record, nor has it found evidence that the trial court said, "I'm going to burn him, no plea, no nothing." Pet. for Writ of Habeas Corpus 58, ECF 1. In fact, the record reveals that Mattison rejected a favorable plea offer, which called for a sentence of ten to twenty years in prison. 11/12/07 Trial Tr. at 3–4.

Nevertheless, Mattison maintains that the cumulative effect of the trial court's errors was so prejudicial as to deny him a fair trial. This claim, however, is not cognizable on habeas corpus review. *See Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011).

II.    Sufficiency of the Evidence

In his first appeal, Mattison asserted that there was insufficient evidence at trial that he engaged in cunnilingus, fellatio, and sexual intercourse with the complainant when she was under the age of 13 or between the ages of 13 and 15. The Michigan

Court of Appeals disagreed and concluded that the evidence was sufficient to sustain Mattison's convictions. He raises the argument again here.

The Supreme Court has held "that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Following *Winship*, the critical inquiry on review of a challenge to the sufficiency of the evidence supporting a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979) (internal citations and footnote omitted).

Mattison's sufficiency-of-the-evidence claim is a *Jackson* claim. Such claims "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (per curiam). First is deference to the jury, for it is responsible for deciding what conclusions should be drawn from the evidence admitted at trial. *Id*. Second is deference to the state court. A federal court may not overturn a state court's rejection of a sufficiency-of-the-evidence challenge simply because it disagrees with the state court; the state court decision must

have been "objectively unreasonable." *Id.* And the *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16.

Here, the prosecutor had to prove that Mattison sexually penetrated a person under 13 years of age. Mich. Comp. Laws § 750.520b(1)(a). The prosecutor also had to prove that Mattison engaged in sexual penetration with a person who was 13, 14, or 15 years old and related to him. Mich. Comp. Laws § 750.520b(1)(b)(ii). There was no dispute that Mattison was the complainant's biological father, so the primary issue was whether he sexually penetrated her when she was under the age of 16. He raises several arguments concerning this issue.

A.  Sexual Intercourse

First, Mattison alleges that there was insufficient evidence that he sexually penetrated the complainant when she was under the age of 13. He maintains that the complainant was vague as to her age when he began to engage in sexual intercourse with her.

The complainant's date of birth was October 6, 1989, 11/12/07 Trial Tr. at 125, and she initially testified on direct examination that she was 13 or 14 years old during one of the first times that Mattison placed his penis in her vagina. *Id.* at 136. She subsequently testified that her mother moved back into Mattison's house in April of 2001 and that Mattison first put his penis in her vagina before her parents re-married that

year. *Id.* at 137, 172.[3] The complainant would have been 11 years old in April of 2001 and 12 years old on October 6, 2001.

Later, on cross-examination, the complainant testified that she had sex with her father 20 times between the ages of 11 and 17. *Id.* at 154. And she clarified that "sex" meant her father put his penis in her vagina or he had oral sex with her. *Id.* at 154–55. She thought that she was 10, 11, or 12 years old the first time Mattison had sex with her, *id.* at 156–59. The Court concludes that there was sufficient evidence of sexual intercourse with the complainant when she was under the age of 13.

B.  Cunnilingus and Fellatio

Mattison also alleges that there was insufficient evidence that he engaged in cunnilingus and fellatio with the complainant when she was under 16 years of age. Once again, the element in dispute is penetration.

Under state law, "sexual penetration" means "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body . . . ." Mich. Comp. Laws § 750.520a(r). "Sexual contact," in contrast, consists of "the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner . . . ." Mich. Comp. Laws § 750.520a(q).

---

[3]  Mattison himself confirmed that the complainant was 11 or 12 years old when he re-married the complainant's mother. 11/13/07 Trial Tr. at 64–65.

### 1. Cunnilingus

In challenging the sufficiency of the evidence on the count charging him with cunnilingus, Mattison relies on the complainant's testimony that his tongue touched "the top part of [her] vagina." 11/12/07 Trial Tr. at 143.

"[C]unnilingus requires the placing of the mouth of a person upon the external genital organs of the female which lie between the labia, or the labia itself, or the mons pubes." *People v. Harris*, 158 Mich. App. 463, 470 (1987). "[T]here is no requirement . . . that there be something additional in the way of penetration for that sexual act to have been performed." *Id.*; *see also People v. Bristol*, 115 Mich. App. 236, 238 (1981) (explaining that "penetration of the labia majora is beyond the body surface," and therefore the female genital opening includes the labia majora).

Here, the complainant testified that Mattison kissed her vagina or used his tongue to touch the top of her vagina. 11/12/07 Trial Tr. at 142–43. The jury could have inferred from this testimony that Mattison's mouth or tongue touched the complainant's vaginal opening or labia. This was sufficient to establish cunnilingus. *See People v. Legg*, 197 Mich. App. 131, 133 (1992).

### 2. Fellatio

Mattison likewise alleges that there was insufficient evidence that he engaged in fellatio with the complainant. Fellatio is more than oral contact with the male genitals: it "requires entry of a penis into another person's mouth." *People v. Reid*, 233 Mich. App. 457, 480 (1999). The complainant testified that Mattison made her suck or kiss his

penis. 11/12/07 Trial Tr. at 144. Mattison contends that to say kissing a penis amounts to fellatio blurs the distinction between contact and penetration.

The complainant, however, was more specific in her subsequent testimony. In response to a question from the prosecutor, the complainant indicated that Mattison put his penis in her mouth more than three times, *id.*, and on cross-examination, she stated that there were times when Mattison placed his penis in her mouth, *id.* at 155. This was sufficient evidence of fellatio.

C. Conclusion

"In criminal sexual conduct cases, a victim's testimony may be sufficient to support a defendant's conviction and need not be corroborated." *People v. Solloway*, 316 Mich. App. 174, 181 (2016), *appeal denied*, 894 N.W.2d 604 (Mich. 2017). In this case, a rational juror could have concluded from the complainant's testimony, taken in the light most favorable to the prosecution, that Mattison sexually penetrated the complainant when she was under the age of 13 and that he also engaged in cunnilingus and fellatio with her when she was under the age of 16. The evidence was therefore sufficient to sustain Mattison's convictions; the Michigan Court of Appeals' decision upholding Mattison's convictions was neither contrary to, nor an unreasonable application of, *Jackson*. Habeas relief is not warranted on Mattison's challenge to the sufficiency of the evidence.

III.    Trial Counsel

Mattison next alleges that his trial and appellate attorneys were ineffective. Specifically, he asserts that trial counsel was unprofessional and that the attorney failed

to do the following: (1) adequately cross-examine the witness; (2) investigate witnesses, evidence, and medical records; (3) submit evidence and transcripts; (4) object to biased jurors and to the prosecutor's misconduct; and (5) conduct an adequate voir dire. Mattison further contends that appellate counsel was ineffective for failing to raise all these claims on direct appeal. The Michigan Court of Appeals found no merit in Mattison's claims about his trial attorney and stated that Mattison had "not affirmatively demonstrated that his counsel's performance was objectively unreasonable and so prejudicial as to deprive him of a fair trial." *Mattison*, 2009 WL 1441548, at *7.

A.  The Standard

Ineffective-assistance-of-counsel claims must satisfy two prongs. The defendant must demonstrate both that "counsel's performance was deficient" (the deficiency prong) and that "the deficient performance prejudiced the defense" (the prejudice prong). *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The deficiency prong requires a showing that "counsel's representation fell below an objective standard of reasonableness" and that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687–88. The prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. A defendant must therefore demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

In a habeas case, review of an ineffective-assistance-of-counsel claim "is doubly deferential because counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (internal quotation marks and citations omitted). Federal courts therefore afford "both the state court and the defense attorney the benefit of the doubt." *Id.*

B.  The Claims

1.  Failure to Investigate and Adequately Cross-Examine
the Witness

Mattison alleges that his trial attorney failed to investigate all the discovery materials in his case, failed to present every conceivable defense, and failed to adequately cross-examine the complainant regarding inconsistencies in her testimony. Specifically, he contends that his attorney should have investigated and questioned the complainant about her age at the time of the first incident, the exact date and time of the last incident of criminal sexual conduct, and the date she disclosed the abuse to a teacher and her mother. He also contends that counsel should have investigated the complainant's absences from school, her prior accusation of sexual abuse, and evidence that she mistreated her siblings. Finally, Mattison claims that trial counsel should have investigated alibi witnesses, as well as sales receipts and his work records to show that he was elsewhere when the sexual abuse occurred.

Attorneys have a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. The Court looks to an attorney's decisions "in light of all the circumstances"

*Id.* at 690. And contrary to what Mattison alleges, defense counsel is not required to investigate every conceivable defense. *See Couch v. Booker*, 632 F.3d 241, 246 (6th Cir. 2011).

The record here amply supports a finding that Mattison's counsel's decisions were within the bounds of reasonable, professional judgment. At the time of trial, complainant was only eighteen years old. She was questioned—by the prosecutor, by defense counsel, or both—about the first time she engaged in sexual activity with Mattison. She was also asked about her school attendance and grades, her delayed disclosure of the abuse to her mother and a teacher, and Mattison's threats. The cross-examination alone consists of twenty-two pages of transcript, and it covered a variety of topics that were meant to discredit the complainant's testimony. Finally, Mattison himself testified about the complainant's prior accusation of sexual abuse, her alleged lies, and her relationship with her siblings.

Mattison contends that counsel could have further attempted to impeach the complainant by cross-examining her about exact dates and times of the sexual abuse. But counsel may have reasonably determined that such examination would be futile given the complainant's testimony that the abuse occurred over a five-year period when she was young and that sometimes the sexual activity lasted for only five or ten minutes. And for the same reasons, defense counsel was not ineffective for failing to try to establish an alibi defense.

Defense counsel's level of investigation and cross-examination did not amount to ineffective assistance.

### 2. Failure to Submit Transcripts and Other Evidence

Mattison also asserts that trial counsel should have introduced the preliminary examination transcript and other evidence, such as the complainant's statement to the police and medical records. Defense counsel did question the complainant about her testimony at the preliminary examination—but the transcript itself likely would have harmed, rather than helped, Mattison's defense.

According to Mattison, defense counsel could have done more to point out discrepancies between the complainant's prior testimony, her statement to the police, her medical records and her testimony at trial. But the alleged discrepancies were minor, and additional impeachment would not have made a difference in the trial. Defense counsel was not ineffective for failing to attempt to admit transcripts and other documentary evidence.

### 3. Failure to Object to Juror Bias and to the Prosecutor's Conduct and Failure to Adequately Conduct *Voir Dire*

Next, Mattison claims that trial counsel was ineffective for failing to object to the prosecutor's conduct and the seating of biased jurors. The Court has already explained, *supra*, that there is no basis for concluding that jurors Spence and Scott were biased against Mattison. And as the Court will discuss, *infra*, the prosecutor's conduct did not deprive Mattison of a fair trial or due process of law. Counsel was therefore not ineffective for failing to make meritless arguments or meritless objections. *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013); *Conley v. Warden Chillicothe Corr. Inst.*, 505 F. App'x 501, 507–08 (6th Cir. 2012).

### 4. Failure to be Professional

In his final claim about trial counsel, Mattison contends that his first attorney (not trial counsel) made him obtain the complainant's school records, forced him to go to counsel's home to pick up his mail, and then abandoned him before trial. Mattison claims that his second attorney violated ethical cannons, lost his file, and eventually was suspended from the practice of law for a few years. According to Mattison, he received almost no assistance from his attorneys, and the outcome of his trial would have been different were it not for counsel's errors.

The first attorney did not abandon Mattison. Rather, he asked another attorney to substitute for him when he became involved in a trial in Mexico. 8/29/07 Mot. Hr'g at 3. The substitute attorney then requested a one-month adjournment in the trial date to become familiar with the case, and he was given about two and a half months to prepare for trial. *Id.* at 3–6. By the final pretrial conference, trial counsel was ready 10/29/07 Pretrial Hr'g Tr. at 3-4, and he performed adequately at trial.

Mattison states that his trial attorney, who was retained, forced him to make payments in unusual places and instead of billing him for the total attorney fee, told him to keep paying every two weeks. Mattison also states that the attorney was suspended from the practice of law. According to Mattison, however, the attorney was suspended three years after Mattison's trial for a matter unrelated to his case. Mattison's own complaint against the attorney for allegedly improper conduct was considered by the Attorney Grievance Commission and dismissed because the evidence did not warrant further action by the Commission. Petition, App. B56, ECF 1-4, PgID 322.

The Court concludes that trial counsel's allegedly unprofessional conduct does not warrant habeas relief. And because Mattison's claims lack merit, appellate counsel was not ineffective for failing to raise the claims on appeal. The state appellate court's rejection of Mattison's claims about counsel was neither contrary to, nor an unreasonable application of, *Strickland*.

## IV.  The Prosecutor

Mattison contends that the prosecutor committed misconduct and thereby deprived him of a fair trial and due process of law. The Michigan Court of Appeals adjudicated this claim on direct appeal and concluded that "none of the instances cited by defendant amounted to prosecutorial misconduct and therefore defendant was not denied a fair and impartial trial." *Mattison*, 2009 WL 1441548, at *7.

### A.  The Standard

Constitutional line drawing in prosecutorial-misconduct cases is "necessarily imprecise." *Trimble v. Bobby*, 804 F.3d 767, 783 (6th Cir. 2015), *cert. denied sub nom. Trimble v. Jenkins*, 137 S. Ct. 41 (2016). Consequently, prosecutorial-misconduct claims are reviewed deferentially in a habeas case, *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004).

"Prosecutorial misconduct not invoking a specific provision of the Bill of Rights is reviewed under the general standard for due-process violations: whether the misconduct was so egregious as to deny the defendant a fundamentally fair trial." *LaMar v. Houk*, 798 F.3d 405, 430 (6th Cir. 2015) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643–45 (1974)), *cert. denied*, 136 S. Ct. 1715 (2016). "[T]he touchstone of

due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "In deciding prosecutorial misconduct claims, the court considers the effect of any misconduct on the trial as a whole." *LaMar*, 798 F.3d at 431 (citing *Darden v. Wainwright*, 477 U.S. 168, 182 (1986)). "If the misconduct was harmless, then as a matter of law, there was no due-process violation." *Bryan v. Bobby*, 843 F.3d 1099, 1113 (6th Cir. 2016) (citing *Greer v. Miller*, 483 U.S. 756, 765 & n.7 (1987)), *petition for writ of certiorari filed*, No. 16-9680 (U.S. June 23, 2017).

B.  The Arguments

Mattison raises a litany of prosecutorial-misconduct claims. According to Mattison, the prosecutor (1) was vague about times and locations for the sexual abuse, (2) misled the jury into thinking the complainant was under the age of 16 when sexual activity occurred in his van, (3) erroneously admitted evidence, (4) relied on false testimony, (5) withheld exculpatory evidence, (6) improperly attacked his character, and (7) acted improperly in his closing arguments.

As to vagueness: it is true that the complainant did not provide specific dates, times, and locations for all the events in question. But in a criminal sexual conduct case where the victim is a child, "time is not of the essence, nor is it a material element[.]" *People v. Waclawski*, 286 Mich. App. 634, 707–08 (2009) (citing *People v. Stricklin*, 162 Mich. App. 623, 634 (1987)). Thus, the prosecutor was not required to elicit testimony regarding precise dates, times, and locations for the crimes.

Nor did the prosecutor mislead the jury into thinking that the complainant was under the age of 16 when the events in question occurred. The complainant testified that the sexual abuse began when she was 11 or 12 years old, that it continued for about five years, and that as she matured, sexual activity with Mattison occurred two or three times a week. 11/12/07 Trial Tr. at 126–30, 141, 169, 171–72, 173–74. Although the sexual activity that led to the discovery of Mattison's DNA and the complainant's skin cells in Mattison's van occurred when the complainant was older than 15, the prosecutor did not charge Mattison with that particular incident. Nevertheless, the evidence from that activity was relevant and admissible because it tended to corroborate the complainant's testimony that Mattison had engaged in sex with her when she was younger.

As for mere inconsistencies in the complainant's testimony: they did not establish the knowing use of false testimony. *See United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989). And inconsistencies in testimony go to the weight of the evidence, not to its admissibility. *People v. Barrera*, 451 Mich. 261, 289 (1996).

Mattison claims that the prosecutor withheld exculpatory evidence that he was working or traveling outside Michigan when the crimes occurred. Prosecutors may not suppress material evidence favorable to an accused. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). But "[t]here is no *Brady* violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available . . . from another source, because in such cases there is really nothing for the government to disclose." *Coe v. Bell*, 161 F.3d

27

320, 344 (6th Cir. 1998) (internal quotation marks and end citations omitted). Here, the allegedly exculpatory evidence pertained to Mattison's own activities. Because he knew the essential facts needed to take advantage of any exculpatory information, the prosecutor did not violate the holding in *Brady*.

Mattison also faults the prosecutor for attacking his character by eliciting testimony on the following topics: (1) he arranged to cut off gas service to the complainant's home after he moved out of the home, (11/13/07 Trial Tr. at 115-17); (2) he shut off the complainant's cell phone service (*id.* at 103); (3) he prevented the complainant from attending an awards ceremony during her class trip to California, (*id.* at 95–97); (4) he divorced his wife one week after the complainant disclosed the abuse (*id.* at 113–14); and (5) he changed his hotel room when he accompanied the complainant on the class trip to California (11/12/07 Trial Tr. at 177–79). Mattison's character, however, was at issue, and he was given ample opportunity to explain his conduct when he testified. The prosecutor's conduct did not deprive Mattison of a fair trial.

Several of Mattison's allegations concern the prosecutor's closing arguments. Mattison points out that the prosecutor said he lied (11/13/12 Trial Tr. at 144, 146, 149, 165), that his testimony was ridiculous and a "smoke screen" (*id.* at 137-38, 152–53, 165–68), that getting an answer to questions was like pulling teeth (*id.* at 166), that he did not ejaculate in the complainant because he did not want to leave his calling card in her (*id.* at 144), that he could not get around the DNA evidence (*id.* at 144,151–53), that

the complainant's story never changed (*id*. at 135–37, 149), and that his divorce was a preemptive strike (*id*. at 165).

When a habeas petitioner challenges the prosecutor's remarks during closing arguments, the appropriate standard is "the narrow one of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). It is therefore not enough to show "that the prosecutors' remarks were undesirable or even universally condemned," but rather, "whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (quotation marks omitted). This means "analyzing disputed comments in the context of the trial as a whole and recognizing that inappropriate comments alone do not justify reversal where the proceedings were otherwise fair.'" *United States v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008) (quotation marks and end citation omitted). And though prosecutors should refrain from interjecting their personal beliefs into the presentation of their cases, *United States v. Young*, 470 U.S. 1, 8–9 (1985), and from stating personal opinions concerning defendants' guilt, *United States v. Daniels*, 528 F.2d 705, 709 (6th Cir. 1976), they may "argue the record, highlight any inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008).

None of the complained-of remarks deprived Mattison of his due-process rights. The prosecutor's closing arguments were based on the evidence and reasonable inferences from the evidence. As such, the remarks were proper. Although the prosecutor did suggest that Mattison's testimony and theories were a lie, a prosecutor

may attack a defendant's credibility to the same extent as any other witness if the defendant testifies. *United States v. Francis*, 170 F.3d 546, 551 (6th Cir. 1999). And when emphasizing discrepancies between the evidence and the defendant's testimony, a prosecutor may even assert that a defendant is lying. *Id*. The prosecutor's reference to the defense as a smoke screen was likewise acceptable, because the remarks were not overly excessive and they did not impair the search for the truth. *See Key v. Rapelje*, 634 F. App'x 141, 149 (6th Cir. 2015). And finally, comments that the complainant never changed her story were proper, because the prosecutor did not imply that she personally believed the complainant or that she knew of evidence which demonstrated the witness's truthfulness, but was not before the jury. *See United States v. Jackson*, 473 F.3d 660, 672 (6th Cir. 2007). The prosecutor attempted to restore the credibility of her main witness through argument rather than through her own personal opinion of the complainant, and she did not imply that she had corroborative evidence, which had been withheld from the jury. This was acceptable conduct. *See United States v. Garcia*, 758 F.3d 714, 723 (6th Cir. 2014).

Still, Mattison maintains that the cumulative effect of the prosecutor's conduct deprived him of due process and a fair trial. As noted *supra*, this claim is not cognizable on habeas corpus review. *Sheppard v. Bagley*, 657 F.3d 338, 348 (2011).

Even if there were instances of impropriety, the state trial court properly instructed the jurors that they should decide the case solely on the evidence, that the lawyers' comments and arguments were not evidence, and that it was their job to assess the credibility of witnesses and to resolve conflicts in testimony. 11/12/07 Trial

Tr. at 103–04, 106; 11/13/07 Trial Tr. at 131, 169, 171–76. And the Court may "presume that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them." *Key*, 634 F. App'x at 150 (quoting *United States v. Olano*, 507 U.S. 725, 740 (1993) (internal quotation marks and alterations omitted)).

In sum: the state appellate court's decision that none of the instances cited by Mattison amounted to prosecutorial misconduct was objectively reasonable. The Court therefore declines to grant relief on Mattison's prosecutorial-misconduct claim.

V.    Actual Innocence

In his supplemental petition, Mattison claims to be actually innocent of first-degree criminal sexual conduct. Claims of actual innocence generally do not "state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact." *Id.*

The complainant's testimony supported the jury's verdict, and Mattison stated at his sentencing that he accepted responsibility for his conduct. He apologized to his daughter and family for what he had done to them, and he admitted that he did something wrong and may have a problem. 12/6/07 Sentence Tr. at 7-10. "[W]hatever

burden a hypothetical freestanding innocence claim would require, this petitioner has not satisfied it." *House v. Bell*, 547 U.S. 518, 555 (2006).

ORDER

**WHEREFORE,** it is hereby **ORDERED** that the habeas petition [1] and supplemental petition [15] are **DENIED.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** because reasonable jurists would not disagree with the Court's assessment of Mattison's claims, nor conclude that the issues deserve encouragement to proceed further.

**IT IS FURTHER ORDERED** that if Mattison appeals the Court's decision, he may proceed *in forma pauperis* on appeal.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: July 31, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 31, 2017, by electronic and/or ordinary mail.

s/David P. Parker
Case Manager